## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CALVIN DELEON TURNER, JR.,

     Petitioner,

v.                                                    Case No. 8:22-cv-2310-WFJ-CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.
_____/

## <u>ORDER</u>

Calvin Deleon Turner, Jr., a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 8). Respondent filed a response opposing the petition. (Doc. 15). Although afforded the opportunity, Mr. Turner did not file a reply. After careful review, the petition is **DENIED**.

## I.    Background

This case arises from Mr. Turner's sexual abuse of M.W, H.G., and B.P., three minor children in the care of Xamadi Johnson, his then-girlfriend. When the abuse took place, M.W. was five years old, H.G. was seven, and B.P. was nine. (Doc. 16-3, Ex. 1b, at 242). On several occasions in late 2014 and early 2015, Mr. Turner entered the girls' bedroom while they were asleep and performed various sexual acts on them. (Doc. 16-2, Ex. 1, at 295-361). The abuse came to light on February 24, 2015, when M.W. spontaneously told Ms. Johnson that Mr. Turner had digitally penetrated M.W. and H.G.'s anuses "when they were sleeping." (Doc. 16-3, Ex. 1b, at 186-87). Later that day, Ms.

1

Johnson reported the allegations to law enforcement, and the victims subsequently underwent forensic interviews with the Sarasota County Child Protection Team. (*Id.* at 191-93).

Mr. Turner was charged with eight counts of sexual battery on a child under twelve and one count of attempted sexual battery on a child under twelve. (Doc. 16-2, Ex. 1, at 187-91). A public defender was appointed to represent him. (*Id.* at 51). Three months later, Mr. Turner moved to fire his lawyer, arguing that counsel "came down here to get an easy check." (*Id.* at 79). The trial court held a hearing and denied the motion, finding "no ineffectiveness on the part of . . . court-appointed counsel." (*Id.* at 86). The same day, Mr. Turner mailed a "motion for waiver of counsel," making an "unequivocal request" to proceed *pro se.* (*Id.* at 87).

Shortly thereafter, the court held a *Faretta*[1] hearing. (*Id.*, Ex. 1a, at 579). Mr. Turner stated that "[u]nder no circumstances" would he accept representation from the Public Defender's Office. (*Id.* at 580). He explained that he "could do just as good as" a public defender. (*Id.* at 582). The court advised Mr. Turner that self-representation was "a very, very bad idea," conducted a lengthy colloquy to "make sure [he] totally [understood] what [he was] getting into," and ultimately allowed him to proceed without counsel. (*Id.* at 581-98).

Three months later, Mr. Turner changed his mind, filing a motion for appointment of "an experience[d] attorney." (*Id.*, Ex. 1, at 132). The court granted the motion and

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

appointed the Office of Regional Counsel to represent Mr. Turner. (*Id.* at 135-36). Another three months passed, and Mr. Turner again changed his mind. He filed a motion "for waiver of counsel," stating that he had "made the determination to represent himself during all future court proceedings." (*Id.* at 144). At a *Faretta* hearing two weeks later, however, Mr. Turner withdrew the motion. (*Id.* at 150).

Approximately one week before trial, Mr. Turner renewed his request to proceed *pro se*. (*Id.* at 183). The court held a hearing. Mr. Turner claimed that the Office of Regional Counsel was not "providing proper counsel" because its attorneys were "biased toward his case." (*Id.*, Ex. 1a, at 444). He stated, however, that he "need[ed] some time to prepare for trial" without counsel. (*Id.* at 444-45). The court indicated that if Mr. Turner chose "to represent [himself] at this late stage, [it] would not use that as a basis to continue the case and give [him] time to prepare." (*Id.* at 445). After hearing from counsel, the court ruled that it would not "appoint[] other counsel to represent [Mr. Turner]" because his "attorney [had] not been ineffective." (*Id.* at 452). The court asked Mr. Turner if he still wished to proceed *pro se*; he responded that he did not "have an answer now." (*Id.* at 452, 454). Based on that statement, the court ruled that counsel would remain "on [the] case." (*Id.* at 454). The court proceeded to address other matters. At the end of the hearing, Mr. Turner again "invoke[d] [his] right to go *pro se*." (*Id.* at 540). The court indicated that it would "discuss" the matter later. (*Id.*)

The next day—the Friday before trial—the court held another *Faretta* hearing. (*Id.* at 543). It explained that counsel was "representing [Mr. Turner] not only competently but effectively." (*Id.* at 545-46). It then advised Mr. Turner of the "dangers and disadvantages"

of self-representation. (*Id.* at 548-52). Mr. Turner said he needed additional time to "study" the record and prepare a defense, but the court declined to continue the trial. (*Id.* at 559). Mr. Turner nonetheless stated that he wished to represent himself. (*Id.*) He also rejected the court's offer to appoint standby counsel. (*Id.* at 560). The court allowed Mr. Turner to proceed *pro se*. (*Id.* at 562-63).

The following Monday, just before *voir dire* began, Mr. Turner "changed his mind" and asked for an attorney. (Doc. 16-3, Ex. 1b, at 3). The court "reappointed" Mr. Turner's counsel but indicated that it would be "very unlikely" to allow him to proceed *pro se* if he "change[d] his mind again." (*Id.*) Counsel sought a continuance, and the court denied the request, indicating that trial would proceed as scheduled. (*Id.* at 4-7).

During a break in the proceedings, counsel conferred with Mr. Turner. When court resumed, counsel moved to withdraw from the case based on a "threat" that Mr. Turner had made "to [his] family." (*Id.* at 8). Counsel stated that, as he was explaining to Mr. Turner that "the trial was going forward," Mr. Turner said that "people . . . would do harmful things to [counsel's] family" if he did not "win at this trial." (*Id.*) The court asked Mr. Turner why he "[made] that statement." (*Id.* at 8-9). Mr. Turner said, "I stated how [I] feel and I stated facts." (*Id.* at 9). Asked whether he had "threatened [his] attorney because of his inability to get a continuance," Mr. Turner responded: "It ain't about no continuance. I said what I said. I say what I say however you all take it, whatever the charge going to be, whatever the consequences is." (*Id.*)

After a short break, the court indicated that it was "very concerned about the recent developments in which [Mr. Turner] threatened" counsel. (*Id.* at 10). It noted that Mr.

4

Turner had been "an extremely difficult defendant, volatile at times," and that the "record [was] clear as to how many times he [had] sought to represent himself and chang[ed] his mind." (*Id.*) The court "agree[d]" that counsel "should not be required to continue to represent [Mr. Turner] in light of [the] threat." (*Id.* at 11). And it was "absolutely sure" that if Mr. Turner did not "get his way, he [would] continue with the same conduct irrespective of who the attorney [was]." (*Id.*) The court thus indicated that it was "leaning in [the] direction" of finding that Mr. Turner had "forfeited his right to be represented by counsel." (*Id.* at 12). In support, the court cited *Bowden v. State*, which held that "allegations to kill, rape, or otherwise harm an appointed attorney could constitute grounds for forfeiture of the right to counsel." 150 So. 3d 264, 267 (Fla. 1st DCA 2014). The court said that it would "do a little bit more research" and "decide" the matter "later." (Doc. 16-3, Ex. 1b, at 12).

Soon after, the court returned to the issue of forfeiture. (*Id.* at 45). After finding that the threat "was indeed made," the court granted counsel's request to withdraw. (*Id.* at 45-46). It explained that counsel should not "be expected to have to represent someone who [had] threatened [his family] with physical harm." (*Id.* at 46). It also found that Mr. Turner had "forfeited [his] right to have an attorney" by making the "threat." (*Id.*) The court explained that it would not "appoint another [attorney] given [Mr. Turner's] behavior and [] conduct and [] threats." (*Id.*) The court then proceeded with *voir dire*. (*Id.* at 49-50).

Outside the presence of the jury panel, Mr. Turner claimed that he and counsel had "agreed" to the following plan: counsel "would tell [the court] that [Mr. Turner] threatened him to get him off [the] case." (*Id.* at 109). The court reminded Mr. Turner that he had admitted to making the threat. (*Id.* at 110-11). Mr. Turner said, "That's what I was told to

5

say." (*Id.* at 114). The court indicated that it had made its ruling, but that it would "have a discussion" with counsel about the matter later. (*Id.*) Trial resumed with Mr. Turner proceeding *pro se*. He was found guilty as charged and, shortly after the verdict was read, received a total sentence of life imprisonment. (*Id.* at 446-48, 452-53).

At a post-trial hearing, the court returned to the matter of Mr. Turner's threat. (*Id.*, Ex. 1c, at 629). Counsel again described his conversation with Mr. Turner: "He said to me, if you don't win this case, my people will hurt your family. And I said, what? And he repeated it, because I wasn't quite sure if I honestly heard what was right." (*Id.* at 630). Counsel explained that, although the threat may "have [been] a strategy on [Mr. Turner's] part," he took his client "at his word[]." (*Id.* at 631). Mr. Turner then repeated his allegation that the threat was "[his] and [counsel's] idea." (*Id.* at 632-33). He recounted: "I asked him, is there any way possible, how can I get you off my case. He said, the only way that you can get me off your case is if you . . . threaten me. So I said, you tell the judge whatever you got to tell him to get you off my case." (*Id.* at 633). The court asked counsel if there was any "truth" to the allegation that "the threat idea . . . originated with you; that he asked how can you be taken off the case, and . . . you told him the only way would be if you threaten me." (*Id.* at 634). Counsel said, "No, Your Honor, that's not correct. It's not true. I didn't come up with that idea, I didn't suggest that idea to him, and I didn't think of that idea." (*Id.*)

Following an unsuccessful direct appeal, Mr. Turner moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 8, 10, 18a). He also filed a petition alleging ineffective assistance of appellate counsel. (*Id.*, Ex. 15). The state courts

denied postconviction relief. (*Id.*, Exs. 11, 17, 18b, 20). This federal habeas petition followed. (Doc. 8).

## II.    Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S.

685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The appellate court affirmed Mr. Turner's convictions, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

## III.    Discussion

### A.    Ground One—Forfeiture of Right to Counsel

Mr. Turner contends that the trial court violated the federal constitution by finding that he forfeited his right to counsel. (Doc. 8 at 5, 17). As explained above, the court made this ruling after Mr. Turner threatened to harm counsel's family if he did not "win at . . . trial." (Doc. 16-3, Ex. 1b, at 8). According to Mr. Turner, the court erroneously failed to give him "a prior warning concerning his actions" and "never put [him] under oath

pertaining to [his] threat" to harm counsel's family. (Doc. 8 at 17). Mr. Turner also complains that the court found forfeiture based on its "personal feelings . . . that [he] would display the same conduct in the future irrespective of who the attorney [was]." (*Id.*)

Mr. Turner raised this claim on direct appeal, and the appellate court affirmed in an unexplained decision. (Doc. 16-3, Ex. 2, at 15; Doc. 16-3, Ex. 8). Therefore, this Court "presume[s] that the unexplained decision adopted the same reasoning" as the trial court. *Wilson*, 584 U.S. at 125. Mr. Turner is not entitled to relief because he cannot show that the forfeiture ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[2] 28 U.S.C. § 2254(d)(1).

"'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014). The Supreme Court has repeatedly cautioned lower courts against framing its decisions at "a high level of generality." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013); *see also Brown v. Davenport*, 596 U.S. 118, 136 (2022) (noting that

---

[2] Respondent contends that Ground One is procedurally defaulted. (Doc. 15 at 13). The Court disagrees. As explained above, Mr. Turner properly raised his forfeiture claim on direct appeal, and the appellate court rejected it without explanation. (Doc. 16-3, Ex. 2, at 15; Doc. 16-3, Ex. 8). Mr. Turner later tried to reassert the same claim in his Rule 3.850 motion. (*Id.*, Ex. 18a, at 3-8). The postconviction court held that the forfeiture claim was "procedurally barred" because it "was properly presentable on direct appeal." (*Id.*, Ex. 18b, at 3). This ruling does not mean, however, that the claim is procedurally defaulted on federal habeas review. "[I]f the petitioner properly exhausts his federal claim on direct review and then reasserts his claim on state collateral review only to have the state court impose a procedural bar, that procedural bar will not preclude the federal court merits review of the federal claim." *Federal Habeas Manual* § 9B:11 (2025); *see also Clinkscale v. Carter*, 375 F.3d 430, 441 (6th Cir. 2004) ("[B]ecause on direct appeal [petitioner] properly exhausted his state remedies and did not commit a procedural default, he never had to file a subsequent post-conviction motion in state court; thus, any procedural default that may have occurred with respect to that later, unnecessary post-conviction motion simply does not matter for purposes of this analysis.").

"holdings that speak only at a high level of generality" "cannot supply a ground for relief" under AEDPA). Accordingly, "it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").

The Supreme Court has never addressed whether a criminal defendant may forfeit his right to counsel through egregious misconduct. *See Carruthers v. Mays*, 889 F.3d 273, 290 (6th Cir. 2018) ("The Supreme Court has never addressed whether a criminal defendant may forfeit his right to counsel by . . . threatening multiple court-appointed attorneys."); *Chandler v. Blacketter*, 366 F. App'x 830, 831 (9th Cir. 2010) (affirming denial of habeas petition because petitioner "failed to identify—and we cannot find—any Supreme Court case clearly establishing that the right to counsel cannot be forfeited through a defendant's misconduct"); *Carter v. Slatery*, No. 3:20-cv-483, 2023 WL 5600063, at *14 (M.D. Tenn. Aug. 29, 2023) ("[T]he Supreme Court has not considered the underlying question of when, if at all, a recalcitrant criminal defendant can forfeit his right to counsel."). The absence of on-point precedent from the Supreme Court is fatal to Mr. Turner's claim. *See Woodall*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not

require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

Even apart from the absence of clearly established law, Mr. Turner fails to show that the trial court acted unreasonably in finding forfeiture. The "appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa v. Rhay*, 389 U.S. 128, 134 (1967). But "[t]he right to assistance of counsel, cherished and fundamental though it may be, may not be put to service as a means of delaying or trifling with the court." *United States v. Fowler*, 605 F.2d 181, 183 (5th Cir. 1979). Thus, "under certain circumstances, a defendant who is abusive toward his attorney may forfeit his right to counsel." *United States v. McLeod*, 53 F.3d 322, 325 (11th Cir. 1995). "A court may find that a defendant has forfeited his . . . right to counsel after having engaged in extremely dilatory conduct or extremely serious misconduct." *United States v. Thomas*, 357 F.3d 357, 362 (3d Cir. 2004). "Forfeiture can be found regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding *pro se*." *Id.*

Mr. Turner cannot show that the forfeiture ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Shortly before *voir dire*, Mr. Turner told counsel that "people . . . would do harmful things to [his] family" if he did not "win at . . . trial." (Doc. 16-3, Ex. 1b, at 8). Asked to explain his threat, Mr. Turner said, "I stated how [I] feel and I stated facts." (*Id.* at 9). Mr. Turner subsequently

changed his story, claiming that counsel came up with the idea of the threat as a ploy to get removed from the case. (*Id.* at 109, 114). But counsel denied the accusation, saying that he neither "[came] up with that idea" nor "suggest[ed] [it] to" Mr. Turner. (*Id.*, Ex. 1c, at 634). On this record, a reasonable jurist could conclude that Mr. Turner forfeited his right to counsel by threatening to harm his attorney's family if he did not prevail at trial. *See Fischetti v. Johnson*, 384 F.3d 140, 152 (3d Cir. 2004) ("[C]ases have interpreted the law to require defendants to go to trial unrepresented when they . . . have abused counsel."); *United States v. Thompson*, 335 F.3d 782, 785 (8th Cir. 2003) (defendant forfeited right to counsel by "threaten[ing] to kill [his attorney] if he did not withdraw"); *Thomas*, 357 F.3d at 363 (forfeiture may be "based on a defendant's verbal abusiveness, threats to harm an attorney, and attempts to make an attorney engage in unethical activities"); *State v. Allgier*, 353 P.3d 50, 53 (Utah 2015) ("[M]aking threats to the welfare of appointed counsel may constitute extreme conduct justifying a forfeiture of counsel.").

Moreover, Mr. Turner did not make his threat in a vacuum. As the trial court explained, Mr. Turner had been "an extremely difficult defendant," expressing unfounded "dissatisfaction with counsel" on numerous occasions and repeatedly "changing his mind" about self-representation. (Doc. 16-3, Ex. 1b, at 10). Indeed, the Friday before trial, Mr. Turner stated that he wished to proceed *pro se*. (Doc. 16-2, Ex. 1, at 559). He then changed his mind when he arrived for court on Monday. (Doc. 16-3, Ex. 1b, at 3). Furthermore, Mr. Turner made his threat only after counsel was unable to secure a continuance of the trial. (*Id.* at 7-8). On this record, a reasonable jurist could agree with the trial court's prediction that Mr. Turner "would engage in similar threats or conduct with new counsel if he was

not satisfied with that counsel's performance." (*Id.* at 11). "A defendant cannot use the right to counsel as a means to manipulate the court and cause delay." *United States v. Graham*, 643 F.3d 885, 894 (11th Cir. 2011).

Mr. Turner complains that the court failed to give him "a prior warning concerning his actions" and "never put [him] under oath pertaining to [his] threat." (Doc. 8 at 17). But "no clearly established Supreme Court precedent dictates that formal warnings are required, even in the context of a defendant's waiving his right to counsel, as would be required to overturn the state court's decision under AEDPA." *Carruthers*, 889 F.3d at 291 (citation omitted); *see also Thomas*, 357 F.3d at 362 ("Forfeiture can be found regardless of whether the defendant has been warned about engaging in misconduct . . . ."). Likewise, the Supreme Court has never held that a criminal defendant must testify under oath before a trial court can find that he forfeited his right to counsel.

Thus, because "some fairminded jurists could agree with the state court's decision," Mr. Turner is not entitled to relief on his forfeiture claim.[3] *Downs v. Sec'y, Fla. Dep't of Corr.*, 738 F.3d 240, 257 (11th Cir. 2013).

## B.    Ground Two—Denial of Access to Deposition Transcripts

Mr. Turner contends that the trial court violated his rights to due process and a fair trial by failing to ensure his access to deposition transcripts of H.G. and B.P., two of the victims. (Doc. 8 at 7, 19). During a pretrial hearing, Mr. Turner complained that he had yet to receive the two deposition transcripts, although he had received transcripts of the

---

[3] To the extent that Mr. Turner reasserts Ground One in other parts of his petition, the claim fails for the reasons set forth above.

victims' forensic interviews with the Child Protection Team. (Doc. 16-2, Ex. 1a, at 552). Counsel explained that the depositions of H.G. and B.P. were not transcribed because he "didn't think there was anything that was revealed [during the depositions] that was outside of what had already come through discovery." (*Id.* at 555). Counsel stated, however, that he could arrange for Mr. Turner to listen to "recordings" of the depositions at the county jail. (*Id.*) On the first day of trial, counsel stated that he had not been able to "play those depositions that Mr. Turner wanted to hear." (Doc. 16-3, Ex. 1b, at 7). Counsel said he would "have to get them off the recorder and have them downloaded and put them on something to take them to [Mr. Turner]." (*Id.*) The court instructed counsel to "do that today." (*Id.*) Immediately after this exchange, however, Mr. Turner made the threat that led to the forfeiture of his right to counsel. (*Id.* at 7-8). He ultimately did not receive the deposition transcripts, nor was he able to listen to the recordings. (Doc. 8 at 19-20).

In his petition, Mr. Turner expresses his "belie[f] that the depositions . . . contained impeachable evidence that would have worked in [his] favor" at trial. (*Id.* at 19). But he does not explain how he could have impeached H.G. or B.P. with their deposition testimony. (*Id.* at 19-20). Moreover, the record does not contain the deposition transcripts, and it appears that the depositions were never transcribed. (Doc. 16-2; Doc. 16-3). Mr. Turner nonetheless contends that, "had he not been denied access to the depositions, . . . there is a strong possibility that the outcome of . . . [his] trial would have been much different." (Doc. 8 at 20).

Respondent contends that Ground Two is procedurally defaulted, but the Court need not reach that issue because the claim fails on the merits. *See Dallas v. Warden*, 964 F.3d

1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."). Mr. Turner is not entitled to relief because he cannot show "actual prejudice" under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). "On collateral review, a federal constitutional error is harmless unless there is actual prejudice, meaning that the error had a substantial and injurious effect or influence on the jury's verdict." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) (emphasis omitted). "To show prejudice under *Brecht*, there must be more than a reasonable possibility that the error contributed to the conviction." *Mason v. Allen*, 605 F.3d 1114, 1123 (11th Cir. 2010). "The *Brecht* standard reflects the view that a State is not to be put to [the] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Davis v. Ayala*, 576 U.S. 257, 268 (2015).

Mr. Turner fails to show "more than a reasonable possibility" that the outcome of his trial would have been different had he received H.G. and B.P.'s deposition transcripts. *Mansfield*, 679 F.3d at 1313. As noted above, Mr. Turner does not explain how he could have used the victims' deposition testimony to impeach them at trial. Moreover, the record does not contain the deposition transcripts. The only evidence on the matter is counsel's statement that the depositions were not transcribed because he "didn't think there was anything that was revealed [during the depositions] that was outside of what had already come through discovery." (Doc. 16-2, Ex. 1a, at 555). Thus, Mr. Turner's assertion of prejudice rests entirely on his conjecture that, "had he not been denied access to the depositions, . . . there is a strong possibility that the outcome of . . . [his] trial would have

been much different." (Doc. 8 at 20). Such "speculation" is insufficient to establish actual prejudice. *Calderon v. Coleman*, 525 U.S. 141, 146 (1998); *see also Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal court should not "grant[] habeas relief on the basis of little more than speculation with slight support").

### C. Ground Three—Sufficiency of the Evidence

Mr. Turner argues that one of his sexual battery convictions is "unlawful" because it rested entirely on "a child forensic interview, which is an out-of-court statement." (Doc. 8 at 9, 21). One count of the information alleged that Mr. Turner's "mouth had union with the vagina of H.G." (Doc. 16-2, Ex. 1, at 189). Another count alleged that Mr. Turner's "finger penetrated the anus of H.G." (*Id.*) During her forensic interview, H.G. stated that Mr. Turner (1) "licked" her vagina and (2) "put [his] finger" in her anus. (*Id.* at 325, 330-31). These statements were admitted at trial under Florida's "hearsay exception for the statements of a child victim."[4] *Burgess v. State*, 324 So. 3d 582, 587 (Fla. 1st DCA 2021). At trial, H.G. testified that Mr. Turner "licked his finger and [stuck] it in [her] butt." (Doc. 16-3, Ex. 1b, at 222). She also stated that he "rubb[ed] on [her] leg and [her] thighs." (*Id.*) H.G. did not, however, testify that Mr. Turner licked her vagina. (*Id.* at 221-23). She did not deny that the act occurred; she simply did not mention it in her trial testimony. Mr.

---

[4] "For a child hearsay statement to be admissible, the statement must meet two specific reliability requirements: (1) the source of the information through which the statement was reported must show trustworthiness; and (2) the time, content, and circumstances of the statement must reflect that the statement provides sufficient safeguards of reliability." *Fitzsimmons v. State*, 309 So. 3d 261, 264 (Fla. 1st DCA 2020). Following an evidentiary hearing, the trial court ruled that H.G.'s forensic interview would be "admissible at the trial" based on the two reliability requirements. (Doc. 16-2, Ex. 1, at 232-33).

Turner was nonetheless found guilty of both performing oral sex on H.G. and digitally penetrating her anus. (*Id.* at 447).

Mr. Turner contends that his conviction for performing oral sex on H.G. violates due process because it rested solely on her "child forensic interview." (Doc. 8 at 9, 21). Respondent maintains that this claim is procedurally defaulted, but the Court need not reach that issue because the claim fails on the merits. *See Dallas*, 964 F.3d at 1307 ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

Under the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), a court reviewing a challenge to the sufficiency of the evidence must evaluate whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Under *Jackson*, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. If the record contains facts supporting conflicting inferences, the jury is presumed to have "resolved any such conflicts in favor of the prosecution." *Id.*

Mr. Turner fails to meet this "very difficult standard." *In re Boshears*, 110 F.3d 1538, 1541 (11th Cir. 1997). To secure a conviction on the relevant sexual battery count, the prosecution had to prove beyond a reasonable doubt that Mr. Turner "committed an act upon [H.G.] in which [her] vagina . . . had union with [his] mouth." (Doc. 16-3, Ex. 1b, at

390). H.G. stated in her forensic interview that Mr. Turner "licked" her vagina. (Doc. 16-2, Ex. 1, at 330-31). That testimony alone was sufficient to sustain Mr. Turner's conviction for sexual battery. *See Bussell v. State*, 66 So. 3d 1059, 1061 (Fla. 1st DCA 2011) ("The testimony of a single witness, even if uncorroborated and contradicted by other State witnesses, is sufficient to sustain a conviction."); Fla. Stat. § 794.022(1) (providing that "in a prosecution" for sexual battery, "[t]he testimony of the victim need not be corroborated").

Mr. Turner complains that the testimony supporting his conviction is child hearsay, but that fact is irrelevant to his sufficiency challenge. "If a statement is admissible [as child hearsay], it may be considered as substantive evidence by the trier of fact." *Mikler v. State*, 829 So. 2d 932, 935 (Fla. 4th DCA 2002). Thus, "a child victim hearsay statement is sufficient, on its own, to sustain a conviction if the statement is determined to carry the 'sufficient safeguards of reliability' specifically required by" Florida law. *Williams v. State*, 714 So. 2d 462, 466 n.5 (Fla. 3d DCA 1997). Here, the trial court found that H.G.'s out-of-court statements contained "sufficient safeguards of reliability." (Doc. 16-2, Ex. 1, at 232). As a result, her "hearsay statements . . . were sufficient, on their own, to sustain the conviction." *Glover v. McDonough*, No. 6:07-cv-660-MSS-KRS, 2009 WL 1046261, at *9 (M.D. Fla. Apr. 20, 2009).

To be sure, child hearsay may be insufficient to support a conviction where the victim "completely repudiate[s] or recant[s] her prior out-of-court statements at trial." *Godbolt v. State*, 319 So. 3d 773, 775 (Fla. 1st DCA 2021). But that did not happen here. H.G.'s trial testimony contained no mention of oral sex, but "she did not testify that the [oral sex] did not occur or that she made [it] up." *Scott v. State*, 389 So. 3d 672, 674 (Fla.

1st DCA 2024). Thus, "[b]ecause [H.G.] did not totally repudiate her pretrial statements—which the trial court determined carried the requisite safeguards of reliability for admission as substantive evidence—[this Court] cannot say that the evidence was insufficient to show that a crime was committed." *Godbolt*, 319 So. 3d at 777.

### D.    Ground Four—Prosecutorial Misconduct

Lastly, Mr. Turner argues that the prosecution violated his constitutional rights by making several improper comments during closing argument. (Doc. 8 at 23). Respondent contends that Ground Four is procedurally defaulted, but once again the Court declines to reach that issue because the claim is meritless. *See Dallas*, 964 F.3d at 1307 ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

"To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006).

First, Mr. Turner alleges that the prosecution "improperly shifted the . . . burden of proof" and "announced . . . personal beliefs of [his] guilt" by making the following remarks: "Now, when we look at that first element [*i.e.*, whether Mr. Turner digitally penetrated M.W.'s anus], has it been proven beyond a reasonable doubt? Yes. [M.W.] told [her mother] spontaneously, without her questioning, that Calvin Turner licked . . . his finger

and put it in [her anus]." (Doc. 16-3, Ex. 1b, at 414). These remarks were proper. The prosecution did not shift the burden of proof. Nothing in the challenged remarks suggested that Mr. Turner had "an obligation to produce any evidence or to prove innocence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992). Nor did the prosecution express a "personal belief[]" in Mr. Turner's guilt. (Doc. 8 at 23). Instead, it merely urged the jury to draw a reasonable inference from the evidence presented at trial. "A prosecutor is not limited to a bare recitation of the facts, but instead, may comment on the evidence and express the conclusions he contends the jury should draw from the evidence." *Crenshaw v. Sec'y, Fla. Dep't of Corr.*, No. 16-17735-D, 2017 WL 6761058, at *6 (11th Cir. Oct. 18, 2017); *see also United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014) ("The purpose of closing argument is to assist the jury in analyzing the evidence, and although a prosecutor may not exceed the evidence presented at trial during her closing argument, she may state conclusions drawn from the trial evidence.").

Second, Mr. Turner argues that the prosecution improperly "instruct[ed] the jury to consider a child forensic interview over the victim's testimony [at trial]." (Doc. 8 at 23). This argument rests on the premise that child hearsay is "insufficient" to support a sexual battery conviction. (*Id.* at 23-24). As explained above, the premise is mistaken. *See Williams*, 714 So. 2d at 466 n.5 ("[A] child victim hearsay statement is sufficient, on its own, to sustain a conviction if the statement is determined to carry the 'sufficient safeguards of reliability' specifically required by [Florida law]."). Thus, the prosecution did not commit misconduct by urging the jury to "focus on [the] child forensic interview." (Doc. 16-3, Ex. 1b, at 419).

Third, Mr. Turner claims that the prosecution "improperly shifted the burden of proof" when it made the following remarks: "You don't even look to the lesser-included offense [*i.e.*, simple battery]. You don't even consider it unless you feel that the State didn't prove the charge beyond a reasonable doubt. You are supposed to find the highest offense proven, which will be the sexual batteries." (*Id.* at 426). These remarks did not imply that Mr. Turner had "an obligation to produce any evidence or to prove innocence." *Simon*, 964 F.2d at 1086. Thus, they did not shift the burden of proof. Instead, the prosecution (1) correctly informed the jury of its duty to "find guilt of the highest offense the State proved," *McKee v. State*, 398 So. 3d 1047, 1051 (Fla. 1st DCA 2024), and (2) appropriately "express[ed] [its view of] the conclusions . . . the jury should draw from the evidence." *Crenshaw*, 2017 WL 6761058, at *6.

Fourth, Mr. Turner contends that the prosecution made the following "improper" remarks: "The State has met its burden. We ask you to find him guilty of all the crimes because that is what the evidence supports and that holds him responsible for what he did to those girls in their home where they're supposed to be safe. . . . We ask you to return a verdict of guilty because it's the right thing." (Doc. 16-3, Ex. 1b, at 428). The prosecution did not engage in misconduct by urging the jury to hold Mr. Turner responsible for his crimes. *See Bell v. State*, 108 So. 3d 639, 649 (Fla. 2013) (prosecutor did not overstep in urging jury to "hold the defendant responsible for the crimes he committed and . . . reflect so in your verdict of guilty as charged"); *Houart v. Sec'y, Dep't of Corr.*, No. 8:14-cv-1034-CEH-MAP, 2017 WL 4003759, at *9 (M.D. Fla. Sept. 12, 2017) (state court reasonably concluded that "asking the jurors to hold the [d]efendant accountable is neither

21

improper nor misleading, and is a permissible statement in a prosecutor's closing argument").

As for the prosecution's request to "return a verdict of guilty because it's the right thing," Mr. Turner cannot show prejudice from this isolated remark. (Doc. 16-3, Ex. 1b, at 428). Before closing argument, the trial court instructed the jury that (1) "what the parties say is not evidence," and (2) "[t]his case must be decided only upon the evidence that you have heard from the testimony of the witnesses and have seen in the form of the exhibits in evidence." (*Id.* at 399-400, 409). "Because statements and arguments of counsel are not evidence, improper statements can be rectified by the [trial] court's instruction to the jury that only the evidence in the case be considered." *United States v. Smith*, 918 F.2d 1551, 1562 (11th Cir. 1990); *see also Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("[J]urors are presumed to follow the court's instructions."). Thus, Mr. Turner fails to show "a reasonable probability . . . that, but for the [challenged] remark[], the outcome of the trial would have been different." *Eckhardt*, 466 F.3d at 947.

## IV.    Conclusion

Accordingly, the Court **ORDERS**:

1. Mr. Turner's petition (Doc. 8) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Turner and to **CLOSE** this case.

3. Mr. Turner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only

if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Turner must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Turner has not made the requisite showing. Because Mr. Turner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on March 12, 2025.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**